UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **ROCKETBAR LLC,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Case No. 5:22-cv-470-LCB |
| § | |
| **LAKSHMI DISTRIBUTORS LLC, and** § | |
| **CIRCLE K STORES, INC.,** § | |
| § | |
| **Defendants.** § | |

## OPINION & ORDER

RocketBar, LLC, makes electronic cigarettes. It now brings this suit against Lakshmi Distributors LLC and Circle K Stores, Inc., on claims sounding in contract, in tort, and in equity. More specifically, in its fourth amended complaint (*i.e.*, its fifth attempt at proper pleading), RocketBar asserts the following causes of action: in Count I, a contract claim against Lakshmi, for breach of their "Purchase and Distribution Agreement"; in Count II, a tort claim against both Defendants, for fraud; in Count III, another tort claim, this time against Circle K alone, for interference with the Purchase and Distribution Agreement; and finally, in Count IV, an equitable claim against Circle K for unjust enrichment. (*See* Doc. 60 at 6–9.)

Defendants move to dismiss the operative complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 62, 64.) On those motions, now briefed in full and ripe for adjudication, the Court finds that RocketBar's claims are due to be dismissed.

**I.     BACKGROUND**

All facts underlying this opinion are drawn from RocketBar's fourth amended complaint and the attachments thereto.

RocketBar LLC and Lakshmi Distributors LLC entered into a contract, referred to as the Purchase and Distribution Agreement (PDA), on January 24, 2022. (*See* Doc. 60-1.) Prior to the PDA's execution, Lakshmi was dutybound to pay RocketBar for its electronic cigarettes and component parts ("the Products") upon *delivery* at Circle K's stores. (Doc. 60 at 2.) The PDA changed things.

Under the PDA, RocketBar was entitled to payment from Lakshmi only after Lakshmi received payment from Circle K. (Doc. 60-1 at 1–2 ("The parties agree that [Circle K's] payment is a condition precedent to [Lakshmi's] obligation to pay an invoice.").) Importantly, the PDA acknowledged that Lakshmi was not entitled to payment from Circle K, and thus was not obligated to pay RocketBar, upon delivery of the Products at Circle K's stores. Instead, Circle K was obligated to pay Lakshmi only upon Circle K's sale to the retail consumer. (*Id.*) Because receipt of payment from Circle K was a condition precedent to Lakshmi's payment obligation, the new arrangement—called a "scan-based trading model"—left RocketBar to assume the relative brunt of contractual risk.

In addition, by way of a "merger clause" (sometimes referred to as an "integration clause"), RocketBar and Lakshmi agreed that the PDA constituted "the entire agreement between the parties . . . and supersede[d] any prior agreement or communications between the parties [t]hereto, whether written or oral."[1]

In October 2021—approximately three months before the PDA's execution—principals for RocketBar and Lakshmi met to discuss the possibility of expanding the geographic scope of Circle K stores in which the Products were sold beyond the Southeastern United States. (Doc. 60 at 3.) During that meeting, Lakshmi represented that expansion to Circle K's Gulf Coast unit

---

[1] (Doc. 60-1 at 7.) RocketBar and Lakshmi also agreed that Alabama law would govern any disputes arising under the PDA. (*Id.*)

required RocketBar's assent to the aforementioned "scan-based" sales system. (*Id.*) Lakshmi also asked RocketBar to facilitate a call with an expert on regulations governing RocketBar's electronic cigarettes for purposes of educating Circle K divisions interested in the expansion but eager to better understand the regulatory framework before agreeing to sell the Products. (*Id.*) Two such calls took place, and at their conclusion, multiple Circle K units expressed interest in joining the expansion. (*Id.*) At this time, Lakshmi reiterated to RocketBar that "it would be necessary for RocketBar to make the transition to scan-based sales prior to [additional Circle Ks] accepting delivery of RocketBar products." (*Id.*)

In January 2022—just before execution of the PDA—Circle K approached Lakshmi and "demanded that Lakshmi force RocketBar to switch to scan-based sales." (*Id.*) Circle K also, "demanded that RocketBar provide a $338,000 credit for inventory already in [Circle K's] possession," which RocketBar provided. (*Id.* at 3, 8.) Then, "several weeks" after the PDA's execution, Lakshmi "unilaterally attempted to terminate the PDA despite its failure to comply with Section 11," which provides for the PDA's lawful cancellation.[2]

RocketBar claims that Defendants induced its entry into the PDA by way of fraudulent promises about geographic expansion, stating that "[i]n order to induce RocketBar to switch [to a scan-based system], both Circle K and Lakshmi made specific promises to RocketBar that if the switch was made and an inventory credit was given, Circle K . . . would open up other geographical areas" to RocketBar's Products. (*Id.* at 5.) Without those promises, says RocketBar, it would not have assented to the PDA's terms or provided the inventory credit to Circle K. RocketBar further alleges that Defendants "conspired together to intentionally breach Lakshmi's contractual relationship with RocketBar" and that Defendants' aim was to "induc[e] RocketBar to alter the

---

[2] Doc. 60 at 6. *See also* Doc. 60-1 at 5–6 (Section 11 of the PDA).

3

terms of its contractual relationship with Lakshmi from a purchase-based model to a scan-based model" despite "never intend[ing] to expand the geographic area" in which the Products were sold. (*Id.* at 6–8.) Based on those allegations, RocketBar claims to have lost $338,000 in shipped inventory and over $2,000,000 in "anticipated sales" of the Products. (*Id.* at 8.)

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits parties to request dismissal of claims that fail to satisfy Rule 8(a)'s pleading requirements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 566 U.S. 662 (2009). Rule 8(a) requires "enough facts to state a claim to relief that is plausible on its face" or, in other words, factual allegations that bring "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). If, construing all well-pleaded facts in the light most favorable to the nonmovant, the pleading lacks "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," dismissal is in order. *Id.*

## III.   DISCUSSION

RocketBar fails to state any claim upon which relief can be granted, and its fourth amended complaint (Doc. 60) is accordingly due to be dismissed.

### A.   Breach of Contract

To recover for breach of contract under Alabama law, a party must prove 4 elements: "(1) the existence of a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) damages." *Capmark Bank v. RGR, LLC*, 81

So. 3d 1258, 1267 (Ala. 2011). RocketBar has failed to allege facts sufficient to plausibly support any reasonable inference that Lakshmi breached the PDA.

In its fourth amended complaint, RocketBar alleges no facts regarding the manner in which Lakshmi is supposed to have breached the PDA. RocketBar merely states that in March 2022, "Lakshmi breached the [PDA] by terminating the agreement in direct contravention to [*sic*] Section 11." (Doc. 60 at 6.) Section 11 of the PDA provides multiple avenues to proper termination, including one party's material breach, one party's insolvency, or one party's sudden refusal to conduct business in the normal course. But RocketBar describes neither the manner in which Lakshmi is supposed to have terminated the agreement, nor the manner in which Lakshmi's alleged termination constituted a breach of Section 11, nor the manner in which RocketBar discovered the breach. Count I is utterly devoid of any factual contentions regarding the supposed breach.

To sum it up, RocketBar merely recites the elements of a breach action, supported by nothing but conclusory statements, which won't due under *Twombly* and its progeny. Count I states no claim upon which relief can be granted.

**B.     Fraud**

RocketBar next alleges that Lakshmi and Circle K induced its entry into the PDA by fraudulently promising to expand the geographic breadth of Circle K stores carrying RocketBar's Products in the future. In other words, RocketBar brings a "promissory fraud" claim. *See, e.g.*, *Frank Hollis & Assocs., Inc. v. Tyson Farms, Inc.*, 2006 WL 8436787, at *2 (N.D. Ala. Apr. 7, 2006) ("Alabama law provides that a misrepresentation claim based on a promise to perform an act in the future is *only* a claim for promissory fraud." (emphasis in original)) (first citing *Upton v. Drummond Co.*, 762 So.2d 373, 376 (Ala. Civ. App. 2000); and then citing *Nat'l Sec. Ins. Co. v. Donaldson*, 664 So.2d 871, 876 (Ala. 1995)). Promissory fraud—that is, a claim "based upon a

5

promise to act or not to act in the future"—imposes "a heavier burden than fraud based upon a material, existing fact." *Hindman v. Allstate Fin. Servs., LLC*, 2010 WL 11561220, at *5 (N.D. Ala. July 1, 2010) (citation omitted).

Defendants essentially set forth two alternative arguments in support of dismissal. First, Defendants argue that the PDA's merger clause renders improper for consideration any allegations predating the PDA's execution—namely, any alleged promises regarding intent to expand the geographic scope. *See infra* Part III.B.i. Separately, Defendants contend that RocketBar's fourth amended complaint falls short of the Rule 9 pleading standard applicable to RocketBar's fraud claim. *See infra* Part III.B.ii.

      i.    *The Merger Clause*

Neither the parol evidence rule, nor the PDA's invocation thereof, renders RocketBar's fraud claim facially implausible. At bottom, the reason is that the claim sounds in tort, not in contract. *Dixon v. SouthTrust Bank*, 574 So. 2d 706, 708 (Ala. 1990) (explaining that "the parol evidence rule applies to actions in contract and not actions in tort," and "an action alleging fraud in the inducement is an action in tort").

Under the Alabama Supreme Court's interpretation of the parol evidence rule, "fraud or misrepresentation cannot be predicated upon a verbal statement made before execution of a written contract when a provision in that contract contradicts the verbal statement." *Ramsay Health Care, Inc. v. Follmer*, 560 So.2d 746, 748 (Ala. 1990) (quoting *Tyler v. Equitable Life Assurance Soc'y*, 512 So.2d 55, 57 (Ala. 1987)). But the parol evidence rule does not apply "where the gravamen of the claim is that the defendant fraudulently induced the plaintiff to enter into the contract." *Id.*; *accord Dixon v.*

6

*SouthTrust Bank*, 574 So. 2d 706, 708 (Ala. 1990) (noting that "parol evidence is admissible to show that a written agreement was procured by fraud").

The same goes for a merger clause, which is merely "a portion of a particular contract that restates the rationale of the parol evidence rule within the terms of the contract." *Env't Sys., Inc. v. Rexham Corp.*, 624 So.2d 1379, 1383 (Ala. 1993) (citation omitted). Simply put, a merger clause is "not applicable to exclude evidence relating to a fraud claim." *Id.*; *accord* 3 CORBIN ON CONTRACTS § 580, at 431 n.65 (3d ed. 1960 and 1992 Supp.) ("[I]t is in no case denied that oral testimony is admissible to prove fraud.")

To be sure, a contract's written terms "may be persuasive evidence rebutting . . . a fraud claim," but they "may not operate to bar a trier of facts from considering other legally admissible evidence that would show fraud." *Rexham*, 624 So. 2d at 1383, 1383 n.5 ("[T]he law in this state renders an integration, or merger, clause ineffective to bar parol evidence of fraud in the inducement or procurement of a contract."). The foregoing principles make clear that at the pleadings stage, even more so than at summary judgment, dependence upon parol evidence does not render a promissory fraud claim dead in the water.

ii.   *The Rule 9 Pleading Standard*

RocketBar's fraud claim is nevertheless due to be dismissed under the heightened pleading standard for fraud claims found in Rule 9(b) of the Federal Rules of Civil Procedure. Under Rule 9, "a party must state with particularity the circumstances constituting fraud or mistake," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

At its core, a promissory fraud claim requires that "at the time of the alleged misrepresentation (that is, the promise), the defendant intended not to do the act or acts promised,

7

but intended to deceive plaintiff." *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1204 (11th Cir. 2003) (quoting *Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d 774, 776 (Ala. 1998)). Six elements must ultimately be proved to recover on such a claim: "(1) a false representation; (2) of an existing material fact; (3) that is reasonably relied upon; (4) damage resulting as a proximate cause; (5) that at the time of the misrepresentation, the defendant did not intend to perform the promised act; and (6) that the defendant had an intent to deceive." *Id.* (citations omitted).

As courts (including this one) have oft noted, recovery on a promissory fraud claim presents an onerous task because "the failure to perform a promised act is not in itself evidence of intent to deceive at the time a promise is made." *Campbell v. Naman's Catering, Inc.*, 842 So.2d 654, 658 (Ala. 2002) (quoting *Padgett v. Hughes*, 535 So.2d 140, 142 (Ala. 1988)); *accord Tobin v. Auto Club Fam. Ins. Co.*, 2013 WL 12138874, at *3 (N.D. Ala. Nov. 22, 2013) (same). According to the Eleventh Circuit, the Rule 9(b) standard:

> requires plaintiffs to allege "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud."

*Burgess v. Regional Tech. Ctr., Inc.*, 600 F. App'x 657, 662 (11th Cir. 2015) (per curiam) (quoting *Findwhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011)); *see also Killough v. Monkress*, 2019 WL 1696811, at *1 (N.D. Ala. Apr. 17, 2019) (applying same in context of promissory fraud) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

RocketBar's allegations are insufficient to survive dismissal. RocketBar alleges that Lakshmi and Circle K "fraudulently represented to RocketBar that [they] intended to expand the geographic area in which the Products were to be sold" for purposes of enticing

8

RocketBar to sign the PDA. (Doc. 60 at 7.) To that end, RocketBar alleges that Defendants "never intended to expand the geographic area." (*Id.* at 8.) Those allegations fall well short of the applicable pleading standard, largely for the reasons articulated by Judge Kallon in *Killough v. Monkress*, 2019 WL 1696811, at *4.

In that case, Killough (an engineer) started a company (TCS) for purposes of servicing defense contracts and, thereafter, began attempting to procure work from large corporations like Boeing. *Id.* at *2. Realizing that TCS was not yet established enough to compete for contracts of that magnitude, he approached APL—namely, its representative, Monkress—to discuss partnership. *See id.* Killough and Monkress negotiated a written agreement ("the Contract") under which Killough would bring missile defense contracts (the "TCS-related contracts") to APL and service them for APL. *Id.*

During negotiations, the parties reached an *oral* agreement not ultimately included in the Contract; pursuant to those negotiations, the parties purportedly agreed that Killough would receive 50% of profits flowing from the TCS-related contracts and that APL would eventually subcontract the TCS-related contracts to TCS when TCS became prepared to handle the task on its own. *Id.* But later, Killough discovered that Monkress appeared to be overstating the expenses associated with the TCS-related contracts—*i.e.*, that APL was keeping more than 50% of the *true* profits for itself. *Id.* When Killough attempted to enforce the oral agreement and have APL subcontract the work to TCS, Monkress discharged him. *Id.*

Killough and TCS filed a promissory fraud action against Monkress and APL, alleging that Monkress "never intended to transfer the TCS-related contracts to TCS." *Id.* at *4. In an effort to prove fraudulent intent at the time the Contract was executed, the

9

plaintiffs identified "Monkress's discharge of Killough and Monkress's request that Killough not discuss the promised transfer with potential new employees." *Id.* Those allegations, determined Judge Kallon, were "unavailing" for two primary reasons. *Id.* The first reason was that "the general allegation that Monkress and APL had no intention of performing at the time the parties reached an agreement" merely constituted "a recitation of the elements of the claim," so it "was not entitled to a presumption of truth." *Id.* (citing *Iqbal*, 556 U.S. at 678–79.) And even viewing in Killough's favor the allegations regarding his termination and Monkress's request for nondisclosure of the oral promise, nothing led "to a plausible inference that the defendants never intended to transfer the contracts when the parties entered their alleged agreement." *Id.* To the contrary, it was "just as plausible that the defendants decided against transferring the contracts to TCS *after they learned how lucrative the contracts proved to be*." *Id.* (emphasis added) (citing *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

The same holds true in the instant case. RocketBar makes only the most threadbare allegation that Defendants never had any intention of expanding the geographical scope of sales; it's equally plausible that they had every intention of doing so until they realized, perhaps, that selling the Products in additional regions would not serve their business interests under the PDA.[3] There would be nothing fraudulent about that, and RocketBar has done nothing to advance particular facts that bring the issue—Defendants' intent at the time of the alleged misrepresentations—beyond the realm of the conceivable and into the

---

[3] *See, e.g.*, *Am. Dental*, 605 F.3d at 1290 ("[C]ourts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." (quoting *Iqbal*, 556 U.S. at 682)).

realm of the plausible under Rule 9(b)'s heightened pleading standard. Count II must accordingly be dismissed.

### C. Tortious Interference

"The elements of a cause of action for tortious interference with a contract are 1) the existence of a contract or business relation, 2) the defendant's knowledge of the contract or business relation, 3) intentional interference by the defendant with the contract or business, and 4) damage to the plaintiff as a result of the defendant's interference." *Serra Chevrolet, Inc. v. Edwards Chevrolet, Inc.*, 850 So.2d 259, 265 (Ala. 2002) (internal punctuation omitted) (quoting *Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc.*, 611 So.2d 238, 246–47 (Ala. 1992)).

The entirety of RocketBar's tortious interference claim against Circle K goes like so: "Circle K has interfered with the [PDA] by demanding that Lakshmi improperly terminate the [PDA] without just cause." (Doc. 60 at 9.) That sentence, together with the factual allegations summarized *supra* Part I, constitutes the entirety of RocketBar's tortious interference claim. The Court, quite frankly, has no idea what to make of the claim. The Court can only say that RocketBar brings no such claim that rises to the level of plausibility necessary to withstand Circle K's motion. To illustrate, the Court notes that nowhere in the fourth amended complaint does RocketBar allege how, or when, Circle K purportedly demanded that Lakshmi terminate the PDA. In fact, RocketBar says that Lakshmi "unilaterally" terminated the agreement. (Doc. 60 at 6.)

### D. Unjust Enrichment

Finally, in Count IV, RocketBar alleges that Circle K was unjustly enriched by receipt of the Products and the $338,000 inventory credit.

To recover for unjust enrichment under Alabama law, a claimant must show not only that the defendant received a benefit but also that retention thereof would be, well, unjust. *See, e.g., Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.*, 77 So. 3d 139, 146 (Ala. 2011). And absent "mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been *unjustly* enriched." *Id.* (emphasis in original) (quoting *Welch v. Montgomery Eye Physicians, P.C.*, 891 So. 2d 837, 843 (Ala. 2004)).

RocketBar does not allege that it mistakenly conferred the Products or credit upon Circle K. And RocketBar has offered no colorable allegation that Circle K acted fraudulently or otherwise unconscionably. *See supra* Part III.B. In other words, whatever benefit Circle K might have received from RocketBar, its retention of that benefit cannot plausibly be characterized as "unjust" under Alabama law. Count IV is accordingly due to be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants motions (Doc. 62; Doc. 64) are **GRANTED**, and this case is hereby **DISMISSED with prejudice**. Pursuant to Rule 58 of the Federal Rules of Civil Procedure, a separate final judgment will be entered contemporaneously herewith. All other pending motions (Doc. 74; Doc. 75) are **DENIED** as **MOOT**.

**DONE** and **ORDERED** August 23, 2023.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE